UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X
SABAS MARTINEZ,

        *Petitioner*,

-against-

                               **MEMORANDUM AND ORDER**

LYNN J. LILLEY,                   21-CV-6912 (KAM)
Superintendent of Eastern NY
Correctional Facility,

        *Respondent*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    *Pro se* Petitioner Sabas Martinez ("Petitioner") is incarcerated pursuant to a judgment of the County Court, Suffolk County, convicting him of attempted murder in the second degree, assault in the second degree, criminal possession of a weapon in the fourth degree (two counts), and endangering the welfare of a child (two counts). (*See* ECF No. 1, Petition for Writ of Habeas Corpus ("Pet."), at 1.) Petitioner filed this action on December 6, 2021, seeking habeas relief pursuant to 28 U.S.C. § 2254. (*See id.*)[1] For the reasons set forth below, Mr. Martinez's petition is respectfully DENIED.

---

[1] The petition contains four volumes. (ECF Nos. 1 through 1-4.) Each volume will be referenced according to their volume number ("Pet.," "Pet. II," "Pet. III," and "Pet. IV" respectively.) Citations to the petition refer to the page number assigned by the court's CM/ECF system. Unless otherwise indicated, all citations in this memorandum refer to the page number assigned by the court's CM/ECF system.

## BACKGROUND

I.   **Factual Background[2]**

On February 13, 2011, at approximately 1:00 am, Noemi Sanchez arrived at her home in East Hampton, New York.  (ECF No. 6-11, First Trial Transcript ("Tr."),[3] at 225.)   Ms. Sanchez is Petitioner's former girlfriend and the mother of their three daughters, (*id.* at 202-03): 22-year-old Kitzia, 16-year-old A.M., and 11-year-old N.M., who were sleeping inside, (*id.* at 69-71, 224).  Ms. Sanchez had received a number of threatening text messages from Petitioner earlier that month, including but not limited to "I am not going to allowed [sic] anybody else to approach you while I'm alive," and "[w]herever you are and you'll be, somebody's gonna be watching you."  (*Id.* at 222-23.)

Upon entering her home, Ms. Sanchez noticed her front door was unlocked, which was unusual.  (*Id.* at 226.)   Petitioner did not live at Ms. Sanchez's home.  (*Id.* at 208.)  Ms. Sanchez then proceeded to her bedroom, using her phone as a flashlight, where she was met by Petitioner holding a rifle.  (*Id.* at 226-27.) Petitioner told Ms. Sanchez "I told you you were not going to make fun of me" and then proceeded to shoot Ms. Sanchez in the neck as

---

[2] Because Petitioner was convicted, the court summarizes the facts in the light most favorable to the verdict.  *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).
[3] The transcript from Petitioner's first trial ("Tr.") consists of ECF Nos. 6-10 through 6-24.  Citations to this transcript refer to the internal continuous pagination indicated at the top right of each transcript page.

she turned to leave the room.  (*Id.* at 227-30.)  Ms. Sanchez ran towards her eldest daughter's bedroom and screamed for her daughter to call the police.  (*Id.* at 230-31.)  Petitioner caught up with Ms. Sanchez at Kitzia's bedroom and began to stab her in the head with "something pointy."  (*Id.* at 231-33, 565-66.)  A.M. and N.M. also entered the bedroom, at which time A.M. attempted to pull Petitioner off of Ms. Sanchez.  (*Id.* at 233-34.)  Petitioner was able to regain control, however, and pulled Ms. Sanchez to the kitchen in a headlock with a knife held to her face.  (*Id.* at 234-35.)

Once in the kitchen, Petitioner was again confronted by A.M., who was able to get the knife away from Petitioner.  (*Id.* at 375.)  Petitioner then grabbed another knife, described as similar to a steak knife, from the kitchen and proceeded to cut himself while stating that he wanted to die.  (*Id.* at 237, 378.)  At this time, East Hampton Town Police Officer David Martin entered the home, responding to an earlier 911 call.  (*Id.* at 155-57.)  Officer Martin observed Petitioner standing in the kitchen with a knife.  (*Id.* at 159.)  Officer Martin drew his sidearm and ordered Petitioner to drop the knife, but Petitioner did not comply, instead responding "No, I just wanna die."  (*Id.*)  Three other police officers subsequently arrived at the scene, and Officer Martin and the other responding officers, after tasering Petitioner, were able to subdue and arrest Petitioner.  (*Id.* at

3

138, 160-61.)   Police officers later recovered nine air rifle pellets from Petitioner's jacket vest pocket following his arrest. (*Id.* at 477-78.)

Petitioner and Ms. Sanchez were both subsequently treated by EMTs and taken to Southampton Hospital.  (*Id.* at 162, 238.)  Ms. Sanchez was later transferred to Stony Brook Hospital.  (*Id.* at 239.)   There, she was treated by Dr. Steven Sandoval, who documented a puncture wound at the right base of her neck, several superficial lacerations on her scalp, and a deeper laceration on her chest.  (*Id.* at 720.)   Dr. Sandoval testified that hospital imaging indicated the projectile from the puncture wound was impeding blood flow through the vertebral artery, which supplies blood to the brain.  (*Id.* at 721-22, 730.)   Dr. Sandoval also testified to the potential risks of the projectile being dislodged and traveling up towards the brain to further impede blood flow. (*Id.* at 730-32.)   At the time of Petitioner's first trial, the pellet was still lodged in Ms. Sanchez's neck.  (*Id.* at 251.)

## II.  Trials

Following his arrest on February 13, 2011, Petitioner was indicted by a Grand Jury for Attempted Murder in the Second Degree, Assault in the First Degree, Burglary in the First Degree, two counts of Criminal Possession of a Weapon in the Fourth Degree, and two counts of Endangering the Welfare of a Child.  (*See* ECF No. 6-43, Indictment.)

4

**A.    Pretrial *Huntley* Hearing**

On July 13, 2012, Petitioner appeared in Suffolk County Supreme Court for a *Huntley* hearing to determine whether Petitioner's statements to the police would be admissible at trial. (ECF No. 6-2, Hearing Transcript ("H."), at 1.) Petitioner appeared with counsel. (*Id.*) At the hearing, the prosecution called Officer Martin as a witness, and Officer Martin testified that on February 13, 2011, he arrived at Ms. Sanchez's home in response to an emergency call and confronted Petitioner in the home's kitchen. (*Id.* at 8.) Officer Martin continued by stating that he held Petitioner at gunpoint and repeatedly directed him to drop the knife he was holding, to which Petitioner replied "No, I just want to die" and began cutting at his wrists and throat. (*Id.* at 8-9, 15.) Officer Martin further testified that Petitioner was eventually subdued, transported to a hospital, and released into police custody after a few hours. (*Id.* at 10.)

Officer Martin completed his testimony by stating that following Petitioner's release into police custody, Petitioner was taken to the East Hampton Town Police Headquarters. (*Id.* at 21.) The prosecution next called Detective Richard Balnis to testify, who stated that he attempted to question Petitioner the morning following Petitioner's arrest. (*Id.* at 26-27.) Detective Balnis testified that, after confirming Petitioner could speak and understand English, he read Petitioner his *Miranda* warnings, at

which time Petitioner stated "I'm not going to sign anything. I'm not going to say anything. All I want to do is kill myself and die." (*Id.* at 27-29.) Detective Balnis stated he did not question Petitioner further. (*Id.* at 29-30.) Petitioner did not testify or present any witnesses at the *Huntley* hearing. (*See id.* at 36.)

The hearing court denied Petitioner's motion to suppress his statements made to Officer Martin and Detective Balnis. *People v. Martinez*, 130 N.Y.S.3d 828, 829-30 (2d Dep't 2020). The court found that Petitioner's statements (that he wanted to kill himself and die) were made voluntarily and spontaneously, and were not the product of police interrogation. (*Id.* at 830.)

**B. CPL Article 730 Competency Hearings**

Petitioner's trials were also preceded by competency hearings pursuant to New York Criminal Procedure Law ("CPL") Article 730. At a hearing held on March 14, 2013, the prosecution called Dr. Thomas Troiano to testify as to Petitioner's competency to stand trial. (ECF No. 6-3, Hr'g Tr. for March 2013 Hr'gs, at 9-53.) Petitioner was present for the hearing but had to be removed from the courtroom due to his outbursts, so he observed the proceedings from a separate location. (*Id.* at 2-5.) The hearing was adjourned and then re-commenced on March 18, 2013, and the prosecution called Dr. Louis Gallagher to testify as to Petitioner's competency to stand trial. (*Id.* at 84.) After the completion of Dr. Gallagher's testimony, the hearing was adjourned and continued on March 21,

6

2013, at which time Dr. Troiano's earlier testimony was completed. (*Id.* at 191.)  After the hearing was adjourned and continued again on March 25, 2013, the parties brought to the hearing court's attention their difficulty in scheduling Petitioner's expert's testimony and agreed to have a different doctor examine Petitioner. (*Id.* at 196-97.)  The hearing was accordingly adjourned to facilitate the examination.  (*Id.* at 198.)

The hearing was continued on June 14, 2013, at which time Petitioner's counsel called Dr. Alexander Bardey to testify regarding Petitioner's competence to stand trial.  (ECF No. 6-4, Hr'g Tr. for June 14, 2013, at 3.)  Following Dr. Bardey's testimony, the hearing was adjourned, and arguments by the parties were heard on July 12, 2013.  (ECF No. 6-6, Hr'g Tr. for July 12, 2013, at 1-13.)  The hearing court reserved decision and on September 9, 2013, issued a decision finding that Petitioner lacked the capacity to understand the proceedings against him or assist in his own defense as a result of mental disease or defect.  (ECF No. 6-39, Petitioner/Appellant's Brief and Appendix for Appellate Division ("Appellant Br."), at 54.)  Petitioner was then committed to the custody of the New York Commissioner of Mental Health for a period not to exceed one year.  (*Id.* at 55.)

Petitioner was subsequently discharged from Mid-Hudson Psychiatric Center on December 24, 2013, after staff psychiatrists found that he demonstrated both a factual and rational

understanding of his legal situation. (*Id.*) Petitioner returned to court on January 28, 2014, to proceed on the indictment, and the court ordered a second psychiatric exam pursuant to CPL § 730.10(1) on March 12, 2014. (*Id.* at 56.) Following the examination, a second CPL Article 730 hearing was held on June 19 and 20, 2014, with the same experts testifying for the parties as at the first Article 730 hearing. (*See generally* ECF No. 6-7, Hr'g Tr. for June 19-20, 2014.)

Following the second hearing, the court issued a written decision, dated September 29, 2014, adopting the conclusions of the prosecution's experts and finding that Petitioner was "capable of assisting in his own defense." (Appellant Br. at 55-58.) The court explained that although Petitioner "at times, exhibits bizarre and disruptive behavior," the court concluded that Petitioner was "malingering and his behavior is designed to give the impression of being unfit to proceed." (*Id.* at 57.) The court based this decision on the testimony of the experts at the hearing, as well as the report prepared by Mid-Hudson Psychiatric Center. (*Id.*) Accordingly, pursuant to CPL § 730.60(2), the court ordered that the indictment be restored to the court calendar and proceed to trial. (*Id.* at 58.)

### C.  Pretrial *Molineux/Sandoval* Hearing

On December 4, 2014, the trial court held a pretrial combined *Molineux* and *Sandoval* hearing to discuss certain text messages

that the prosecution sought to offer at trial, as well as the scope of any cross-examination of Petitioner, if he were to testify. (ECF No. 6-8, Hr'g Tr. for December 4, 2014, at 8-9, 16.)  At the beginning of the hearing, prior to discussing the substance of the *Molineux/Sandoval* hearing, the Petitioner asked to be heard, and the trial court allowed him to speak.  (*Id.* at 2.)  The Petitioner requested trial court that be "recused" and "disqualif[ied]" from the case, which the trial court denied, and Petitioner continued with a lengthy statement challenging the trial court's authority. (*Id.* at 2-6.)  Petitioner continued with his statement after his requests were denied, and the trial court cautioned him that if he "can't stop talking, [the court is] going to remove you from the courtroom."  (*Id.* at 5.)  Following several additional warnings to stop speaking, the trial court ordered Petitioner removed from the courtroom.  (*Id.* at 6.)

When the hearing resumed following a brief recess, the trial court noted that it had "removed [Petitioner] from the courtroom, but he is able to listen to the proceedings from where he's located."  (*Id.* at 7.)  After hearing arguments from the parties, the trial court ruled that the text messages offered by the prosecution were admissible, reasoning that they "go to the issue of intent."  (*Id.* at 15.)  The Court also conditionally allowed testimony regarding an October 20, 2013, phone call made by Petitioner, provided the individual receiving Petitioner's call

9

testified and would be subject to cross-examination. (*Id.*) Regarding Petitioner's past convictions, the trial court precluded any testimony regarding most of Petitioner's previous convictions and arrests but allowed the prosecution to inquire as to Petitioner's previous False Impersonation conviction from 2009. (*Id.* at 18-23.)  At the conclusion of the hearing, Petitioner's counsel made an additional application for a competency evaluation of Petitioner, citing Petitioner's disruptive behavior at the beginning of the hearing. (*Id.* at 28-29.)  The trial court reserved decision at the time, but subsequently denied the application prior to jury selection beginning on December 9, 2014. (ECF No. 6-9, Hr'g Tr. for December 9-12, 2014, at 4-5.)  The trial court stated that, based on the findings from the previous examinations, that Petitioner was being "purposely disruptive and disorderly to delay the proceedings and delay his trial." (*Id.* at 5.)  Jury selection was conducted over the next several days and the jury was ultimately sworn in on December 12, 2014, with the trial set to begin on January 6, 2015. (*Id.* at 721.)

### D.  Petitioner's First Trial

Opening statements for Petitioner's first trial were delivered on January 6, 2015. (Tr. at 32.)  The prosecution called as witnesses (1) Ms. Sanchez's daughter N.M.; (2) Sergeant John Claflin, Police Officer Steven Niggles, and Police Officer David Martin, all of the East Hampton Town Police Department; (3) Ms.

10

Sanchez; (4) Ms. Sanchez's daughter A.M.; (5) Detectives Jacques Guillois, Gregory Schaefer, and Tina Giles of the East Hampton Town Police Department; (6) Ms. Sanchez's daughter Kitzia; (7) Joseph Galdi, a forensic scientist with the Suffolk County Crime Laboratory; (8) Karen Oswald, an evidence specialist at the Suffolk County Police Department; (9) Dr. Steven Sandoval, a trauma surgeon at Stony Brook Hospital who treated Ms. Sanchez; and (10) Roy Sineo, a forensic scientist with the Suffolk County Crime Laboratory. (*Id.* at 64-777.) Petitioner's counsel called as witnesses (1) Hector Martinez, Petitioner's brother; (2) Sandra Zenderjas, Hector Martinez's wife; and (3) Dr. Mary Elizabeth Fowkes, a neuropathologist at the Icahn School of Medicine at Mount Sinai, who was offered as an expert witness. (*Id.* at 786-852.) Following summations, the trial court instructed the jury as to the law and the jury began their deliberations on January 23, 2015. (*Id.* at 1002.)

On the third day of deliberations, January 28, 2015, the jury issued a note indicating that they were deadlocked on the attempted murder charge but had reached a unanimous verdict on all other counts. (*Id.* at 1043.) The court read the note in the presence of counsel and the Petitioner, and then stated that the Court would accept the partial verdict on Counts 2 through 7. (*Id.*) The jury then delivered its verdict, finding Petitioner guilty of Assault in the Second Degree, both counts of Criminal Possession of a

Weapon in the Fourth Degree and both counts of Endangering the
Welfare of a Child.  (*Id.* at 1044-45.)   The jury acquitted
Petitioner of Assault in the First Degree and Burglary in the First
Degree.  (*Id.*)

The jury continued to deliberate the attempted murder charge
for several days until February 4, 2015, when a juror indicated to
a court officer that there was misconduct in the jury room.  (*Id.*
at 1109.)  The trial court proposed to call the juror to ask him
about the misconduct without revealing the deliberations, and the
parties did not object.  (*Id.* at 1110.)  Subsequently, in the
presence of counsel for both parties, the juror stated that jurors
were engaging in personal verbal attacks and that a juror had
conducted and shared online research on the definition of attempted
murder.  (*Id.* at 1110-11.)  Petitioner's counsel moved for a
mistrial on this basis, pursuant to CPL § 280.10(1), and the trial
court granted the motion.  (*Id.* at 1112, 1114.)  The Court
explained when granting the motion that "[t]here is no double
jeopardy . . . I will reschedule the trial on the count of attempted
murder in the second degree." (*Id.* at 1114.)  Petitioner's counsel
did not object, and the jurors were dismissed.  (*Id.* at 1115-17.)

### E.   Petitioner's CPL § 30.30 Motion

Following the conclusion of Petitioner's first trial, new
trial counsel was appointed by the trial court for Petitioner's
second trial.  (ECF No. 6-25, Hr'g Tr. for February 13, 2015.)  A

bail hearing was subsequently held on March 17, 2015, and the trial court declined to modify the previously-imposed bail. (ECF No. 6-26, Hr'g Tr. for March 17, 2015, at 4.)

Subsequently, on September 16, 2016, Petitioner, through counsel, filed a motion to dismiss the indictment under CPL § 30.30 ("Section 30.30 Motion"), asserting that there were multiple adjournments which should be attributed to the prosecution, rendering the indictment and trial untimely under New York's statutory speedy trial provisions. (ECF No. 6-45, Def.'s Mot. to Dismiss.)  In his motion, Petitioner argued that his case was adjourned without his consent or appearance on fifteen occasions and that the prosecution had failed to meet the speedy trial rules by keeping Petitioner in custody for over five years and seven months since the time of his arrest. (*Id.* at 4-5.)

The prosecution opposed the Section 30.30 Motion by arguing that (1) several of the delays were at Petitioner's request or upon his consent; (2) delays to determine Petitioner's competency were excludable under CPL § 30.30(4)(a); and (3) the prosecution was ready for trial at arraignment and "did not request a single adjournment throughout the pendency of the case." (ECF No. 6-46, Affirmation in Opp'n of Def.'s Mot. to Dismiss, at 3-7.)  The trial court denied Petitioner's motion to dismiss the indictment on statutory speedy trial grounds. *Martinez*, 130 N.Y.S.3d at 830.

13

**F.   Petitioner's Second Trial and Sentencing**

Following the completion of jury selection, opening arguments in Petitioner's second trial were made on November 3, 2016.  (ECF No. 6-30, November 3, 2016, Trial Tr., at 136.[4])  The prosecution called as witnesses (1) Lieutenant John Claflin, Police Officer Steven Niggles, and Police Officer David Martin, all of the East Hampton Town Police Department; (2) Ms. Sanchez's daughter Kitzia; (3) Detectives Jacques Guillois, Gregory Schaefer, and Tina Giles of the East Hampton Town Police Department; (4) Ms. Sanchez's daughter A.M.; (5) Ms. Sanchez; (6) Karen Oswald, an evidence specialist at the Suffolk County Police Department; (7) Detective Investigator Scott Buckley of the Suffolk County District Attorney's Office; (8) Roy Sineo, a forensic scientist with the Suffolk County Crime Laboratory; (9) Anne Paulle, an expert on domestic violence; (10) Dr. Michael Caplan, the Chief Medical Examiner at the Suffolk County Office of the Medical Examiner; (11) Ms. Sanchez's daughter N.M.; and (12) Joseph Galdi, a forensic scientist with the Suffolk County Crime Laboratory. (*See generally* ECF Nos. 6-30 through 6-34, Second Trial Tr. for November 3-10, 2016.)  Petitioner's counsel did not call any witnesses at his second trial, and Petitioner did not testify.  (ECF No. 6-35, Second Trial Tr.t for November 14, 2016, at 2-7.)

---

[4] The transcript from Petitioner's second trial consists of ECF Nos. 6-30 through 6-37, and each day is paginated separately.

The jury then heard summations and was instructed on the law on November 14, 2016, began deliberating the same day, and ultimately reached a verdict on November 16, 2016. (ECF Nos. 6-35 through 6-37, Second Trial Tr. for November 14-16, 2016.) The jury unanimously found Petitioner guilty of the sole count being tried at the second trial - Attempted Murder in the Second Degree. (ECF No. 6-37, Second Trial Tr. for November 16, 2016, at 12.) On December 16, 2016, the trial court sentenced Petitioner to 25 years in custody along with five years of post-release supervision for his conviction of attempted murder. (ECF No. 6-38, December 16, 2016, Sentencing Tr., at 21.) The trial court also sentenced Petitioner to seven years in custody for assault in the second degree, one year for each count of criminal possession of a weapon in the fourth degree, and one year for each count of endangering the welfare of a child. (*Id.* at 22.) The sentences were ordered to run concurrently. (*Id.*)

### III. Direct Appeal

On July 30, 2018, Petitioner's counsel from the Legal Aid Society filed Petitioner's appeal of his judgment of conviction to the Appellate Division, Second Department. (Appellant Br. at 1.) Petitioner also filed a *pro se* supplemental brief on September 4, 2019. (ECF No. 6-40, Appellant's Pro Se Br. ("Appellant P. Br.").) Petitioner argued in the counseled brief that (1) during the first trial, the trial court erred in failing to apprise counsel of the

15

court's intended response to the jury note announcing a partial verdict, in violation of C.P.L. § 310.30; (2) the prosecution failed to prove Petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (3) the second trial for the attempted murder charge was barred on double jeopardy grounds and trial counsel was ineffective because counsel failed to raise a motion to dismiss the retrial on these grounds; and (4) Petitioner's sentence was excessive and Petitioner was again denied the effective assistance of counsel when counsel failed to advise the court of Petitioner's history of mental illness in an effort to mitigate his sentence. (*See generally* Appellant Br.)

Petitioner's pro se supplemental brief additionally argued (1) Petitioner's *Miranda* warnings were not read to him at the time of his arrest; (2) Petitioner's bail was excessive; (3) he was denied his right to counsel during his custodial interrogation; (4) Petitioner did not receive effective assistance of counsel; (5) Petitioner was denied the right to a speedy trial; (6) Petitioner was subject to double jeopardy when he was retried on the attempted murder charge; (7) Plaintiff's due process rights were violated; (8) Petitioner was deprived of his right to be present at material stages of the proceedings; (9) the court did not provide proof of its jurisdiction; (10) Petitioner was denied the right to obtain a copy of his pre-sentence report prior to trial and/or sentencing; (11) Petitioner's judgment of conviction

16

was not verified; (12) Petitioner was denied his right to freedom
of speech; (13) the verdict was against the weight of the evidence;
(14) Petitioner was denied the right to present a defense and call
witnesses; (15) the prosecutors and their witnesses committed
perjury during the proceedings; (16) Petitioner was denied access
to *Rosario* materials from his trials; (17) Petitioner was racially
discriminated against by court officers; and (18) Petitioner did
not consent to the signing of the orders of protection. (*See
generally* Appellant P. Br.)

On September 23, 2020, the Appellate Division affirmed
Petitioner's conviction. *Martinez*, 130 N.Y.S.3d 828. The
Appellate Division held that (1) Petitioner's CPL § 310.30 claim
was both unpreserved and meritless as the court properly provided
defense counsel with notice of the contents of the jury note; (2)
Petitioner failed to preserve his contention of insufficient
evidence to support his conviction, and, regardless, the
prosecution sufficiently established Petitioner's guilt beyond a
reasonable doubt and the conviction was not against the weight of
the evidence; (3) Petitioner's double jeopardy claims were also
both unpreserved and meritless, because one count in the first
trial ended in a mistrial; and (4) Petitioner's sentence was not
excessive. *Id.* at 829-31.

Responding to Petitioner's claims in his *pro se* supplemental
brief, the Appellate Division held that Petitioner's claim that he

17

was denied the constitutional right to a speedy trial was procedurally barred because it was not previously raised before the trial court. *Id.* at 830. The Appellate Division also held that Petitioner's statutory speedy trial claim (Petitioner's Section 30.30 motion, discussed *supra*) was properly denied because all of the periods of delay were excludable under CPL §§ 30.30(4)(a) or (b). *Id.* The Appellate Division also held that Petitioner was provided with meaningful representation at his trials and sentencing, and that Petitioner's claims regarding excessive bail were not properly reviewable as part of his direct appeal. *Id.* at 831. The Appellate Division closed by holding that all of Petitioner's additional contentions were meritless. *Id.*

Petitioner requested permission to appeal the Appellate Division's order to the New York Court of Appeals on September 30, 2020. (ECF No. 6-47, Petitioner's Application for Leave to Appeal.) The New York Court of Appeals denied Petitioner's application for leave to appeal on December 15, 2020. *People v. Martinez*, 162 N.E.3d 685 (N.Y. 2020).

## IV. The Instant Petition

On December 6, 2021, Petitioner filed the instant application seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Pet.) Petitioner's claims largely mirror those raised in his direct appeal, with some changes. (*Id.*) Specifically,

18

Plaintiff argues in his habeas petition that (1) Petitioner was denied effective assistance of counsel when the Court failed to properly apprise counsel of the jury note regarding a partial verdict; (2) the verdict was against the weight of the evidence; (3) Petitioner's re-trial on attempted murder was barred by double jeopardy; (4) Petitioner's sentence was excessive; (5) Petitioner was not advised of his *Miranda* rights at the time of his arrest; (6) Petitioner was denied his right to counsel during his custodial interrogation; (7) Petitioner's trial counsel was ineffective; (8) Petitioner's re-trial for attempted murder was barred by double jeopardy[5]; (9) Petitioner was denied the right to a speedy trial; (10) Petitioner was denied his due process rights throughout the trials; (11) Petitioner's right to be present during trial proceedings was violated when he was removed from the courtroom on several occasions; (12) the trial court did not provide proof of its jurisdiction to Plaintiff; (13) Petitioner was denied the right to obtain a copy of his pre-sentence report prior to trial and/or sentencing; (14) Petitioner's judgment of conviction was not verified; (15) Petitioner was denied his right to freedom of speech during court proceedings; (16) Petitioner was denied the right to present a defense and call witnesses; and (17) the prosecutors and

---

[5] This claim overlaps substantially with the third claim but is more focused on Petitioner's re-trial following the mistrial, as opposed to the third claim, which is focused on whether assault in the second degree is distinguishable from attempted murder in the second degree.  (Pet. at 28, Pet. II at 44.)

their witnesses committed perjury during the proceedings.  (*See generally* Pet, Pet. II, Pet. III, Pet. IV.)  The Respondent filed his answer, the state court record, and his memorandum of law in opposition on March 18, 2022.  (*See* ECF No. 6, Respondent's Answer and attachments.)

Petitioner's reply was due no later than 30 days after the filing of Respondent's answer per the Court's scheduling order, but Petitioner did not submit a reply within the prescribed deadline or after.  Instead, Plaintiff submitted a letter complaining about prison conditions and access to the law library including a request for the appointment of counsel, which the Court received on April 4, 2022.  (ECF No. 8.)  The Court denied Petitioner's request for the appointment of counsel on October 4, 2022.  (Docket Order dated October 4, 2022.)  Petitioner also submitted two additional letters, which were received by the Court on May 2 and 23, 2022, which accused prison authorities of destroying Petitioner's legal papers.  (ECF Nos. 9, 10.)  The Court considers the letters submitted by Petitioner alongside his Petition, but they do not contain any information relevant to his habeas claims.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on

the merits. 28 U.S.C. § 2254(d). A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*; *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. The court reviews the last reasoned state court decision in the case. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the

petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

State procedural default or failure to exhaust state court remedies will operate as a bar to review unless the petitioner can (1) establish cause for his or her default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrate that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice.  *See Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

A petitioner can fulfill the cause requirement for default in two related ways.  First, the petitioner can demonstrate that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule."  *Gutierrez*, 702 F.3d at 111.  Alternatively, the petitioner can establish cause by demonstrating futility — specifically, that "prior state case law has consistently rejected a particular constitutional claim."  *Id.* at 112 (quoting *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)).  To establish prejudice, the petitioner must demonstrate that the alleged error resulted "in substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions."  *Id.* (alteration in original) (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the court may excuse the procedural default if the petitioner can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (alteration in original) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review pro se habeas petitions with a lenient eye). Consequently, the court is obliged to interpret Petitioner's pleadings as raising the strongest arguments they suggest. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Notwithstanding the requirement to liberally construe a *pro se* filing, Rule 2(c) of the Rules Governing Section 2254 Cases requires a petition to specify all of the petitioner's available grounds for relief, setting forth the facts supporting each of the specified grounds and stating the relief requested. *See Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (explaining that

23

the pleading standard under Rule 2(c) is "more demanding" than the ordinary civil case and requires petitioners to "plead with particularity"). If a claim is "unintelligible," it will be dismissed under Rule 2(c). *Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 54 (2d Cir. 2006).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and thus provides the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

### I.   Ground One: Jury Note

Petitioner renews his claim that the trial court failed to give defense counsel adequate notice of the jury note indicating a partial verdict during his first trial, in violation of CPL § 310.30. (Pet. at 6.) Petitioner presented this claim on direct appeal to the Appellate Division, which found that the claim was unpreserved for appellate review, and, in any event, without merit. *Martinez*, 130 N.Y.S.3d at 830. This Court agrees with the Appellate Division's assessment, and finds that the claim is

24

procedurally barred, not cognizable on habeas review, and without merit.

### A.   Procedural Bar

As an initial matter, Petitioner's first claim is not reviewable because it is procedurally barred.  Federal courts lack authority to review a state court decision that rests on "independent and adequate" state law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).  This rule applies equally regardless of whether the state law ground is substantive or procedural.  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  On direct appeal, the Appellate Division affirmed Petitioner's conviction and held that "[t]he defendant's contention that the County Court failed to comply with the procedure for addressing jury notes . . . is unpreserved for appellate review."  *Martinez*, 130 N.Y.S.3d at 830.  In denying the claim as unpreserved, the Appellate Division relied on state court precedent holding that when "defense counsel had notice of the contents of the note and the court's response, and failed to object at that time, when the error could have been cured . . . defendant's claim is unpreserved for review."  *People v. Ramirez*, 935 N.E.2d 791, 826 (N.Y. 2010).

According to New York's contemporaneous objection rule, "a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an

opportunity of effectively changing the same.'"  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)).  The objecting party must have "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'"  *Downs v. Lape*, 657 F.3d 97, 102-03 (2d Cir. 2011) (alteration in original) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

Here, Petitioner's counsel did not object at the time that the trial court read the jury's note stating it had reached a partial verdict, or subsequently when the trial court agreed to accept the partial verdict.  (Tr. at 1043.)  Accordingly, the Appellate Division properly found Petitioner's claim of error in the handling of the note to be unpreserved on "independent and adequate" state law grounds and this claim is barred for purposes of federal habeas corpus review.  *Coleman*, 501 U.S. at 731-32.

**B.   Merits**

Even if it were not procedurally barred, Petitioner's claim regarding the handling of the jury note is also not cognizable on habeas review because "a claim premised on a violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a federally protected right."  *Cornado v. Bellnier*, No. 10-cv-5265 (RA) (HBP), 2012 WL 6644637, at *5 (S.D.N.Y. Sept. 20, 2012),

*report and recommendation adopted*, 2012 WL 6681692 (S.D.N.Y. Dec. 21, 2012) (collecting cases); *see Stewart v. New York*, No. 20-cv-329 (JMA), 2021 WL 4311054, at *27 (E.D.N.Y. Sept. 22, 2021) (finding petitioner's claim alleging violation of CPL § 310.30 did not provide a basis for federal habeas relief).  Petitioner does not cite to any federal authority in his habeas petition in support of this claim.  (*See* Pet. at 6.)  Because Petitioner does not allege a violation of any federal right in addition to his allegation of a possible violation of § 310.30, his claim is not cognizable on federal habeas corpus review.  *See Johnson v. Graham*, No. 09-cv-5838 (SAS) (KNF), 2010 WL 3855286, at *5 (S.D.N.Y. Oct. 1, 2010) (finding no cognizable claim where petitioner "[did] not cite Supreme Court precedent or any other federal cases," instead citing "section 310.30 of the New York Criminal Procedure Law [] as setting forth jury note protocol, followed by citations to *People v. O'Rama* and *People v. Kisoon*, cases where the New York Court of Appeals applied section 310.30").

Even if the claim were cognizable on habeas review, the Court finds that Petitioner's claim is meritless.  CPL § 310.30 requires that, upon receipt of a jury note, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper."  CPL § 310.30.  Here, the note in question

27

was read into the record by the court in the presence of both plaintiff and defense counsel, and the jury. (Tr. at 1043.) After accepting the jury's partial verdict, the court instructed the jury to return the following day to continue deliberations of count one, on which they were deadlocked. (*Id.* at 1046-47.) In doing so, the court complied with its core responsibility to give counsel meaningful notice of the jury note under CPL § 310.30. *See People v. Nealon*, 41 N.E.3d 1130, 1135-36 (N.Y. 2015) (holding that reading the contents of the jury note into the record in the presence of counsel and the jury provided meaningful notice and that the trial court's failure to have a discussion with counsel before responding to the note did not constitute a "mode of proceedings error," and thus counsel was required to object in order to preserve a claim of error for appellate review).

Accordingly, because the parties were provided with meaningful notice of the jury note, and defense counsel did not object to the trial court's acceptance of the partial verdict, Petitioner does not allege a violation of CPL § 310.30. Accordingly, even if Petitioner's claim was not procedurally barred and not cognizable on habeas review, it is without merit.

## II. **Ground Two: Sufficiency of the Evidence**

Petitioner's second claim renews his argument made to the Appellate Division that his guilt was not proved beyond a reasonable doubt, and that the verdict was against the weight of

the evidence.  (Pet. at 10.)  The Appellate Division rejected this claim as unpreserved for appellate review and without merit. *Martinez*, 130 N.Y.S.3d at 830-31.

### A.   Procedural Bar

First, the Appellate Division found that Petitioner "failed to preserve for appellate review his contention that the evidence was legally insufficient to support the convictions (*see* C.P.L. [§] 470.05 [2])." *Id.* at 830.  In denying the claim as unpreserved, the Appellate Division relied on New York's contemporaneous and specific objection rule which requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial. CPL § 470.05(2).  New York's preservation rule suffices as an independent state law ground, *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007), but the remaining issue is whether it is "adequate" to prevent federal collateral review.  *Id.* at 218.  A state preservation rule is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state," but "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Garvey v. Duncan*, 485 F.3d 709, 713—14 (2d Cir. 2007) (citation omitted).

New York courts have long required that objections to the trial court address the specific deficiency in the evidence to

preserve an issue for appeal, in order to allow the trial judge to evaluate the legal merits of the motion. *See People v. Hawkins*, 900 N.E.2d 946, 950–51 (N.Y. 2008); *People v. Gray*, 652 N.E.2d 919, 922 (N.Y. 1995).  At the close of the prosecution's case, in the first trial, defense counsel moved for dismissal of three counts of the indictment – assault in the first degree, burglary in the first degree, and attempted murder, on the grounds that the evidence was legally insufficient to support those charges.  (Tr. at 776-78.)  The jury ultimately found Petitioner not guilty of both assault in the first degree and burglary in the first degree, and failed to reach a verdict on attempted murder in the second degree.  (*Id.* at 1045-47, 1114.)  As such, to the extent Petitioner seeks to rely on the motion for dismissal from the first trial, it did not apply to any of the counts of conviction from that trial and cannot preserve any claim of error regarding sufficiency of the evidence for the counts of conviction.

In Petitioner's second trial, defense counsel moved to dismiss the attempted murder charge at the close of the prosecution's case, stating the following:

> MR. STAFFORD: Judge, at this time I have a motion to dismiss.  The People have not proven their case.  They have not made a prima facie case at this point.  Even in the light most favorable to them, I believe that the count should be dismissed.

(ECF No. 6-34, Second Trial Transcript for November 10, 2016, at 171-72.)  The Appellate Division properly applied state court

precedent in finding that Petitioner's general, perfunctory motion to dismiss failed to preserve a legal sufficiency challenge for appeal.

When counsel's objection does "little more than argue that the People failed to prove the essential elements of [a crime]," the legal question is unpreserved for review. *Hawkins*, 900 N.E.2d at 951. Here, Petitioner's counsel simply stated that a prima facie case had not been made. As a result, Petitioner's motion to dismiss failed to alert the trial court to the specific claim later advanced in Petitioner's appellate brief, that the prosecution failed to prove that Petitioner "intended to murder [Ms. Sanchez]." (Appellant Br. at 29.) Other courts in this circuit have reached a similar conclusion on legal sufficiency claims found to be procedurally barred by the Appellate Division under such circumstances. *See, e.g.*, *Hill v. Lee*, No. 11-cv-640 (ER) (GAY), 2013 WL 3227641, at *5-6 (S.D.N.Y. June 25, 2013) (finding procedural bar prevents habeas review in case where Appellate Division cited *Hawkins*, 900 N.E.2d 946). Further, the Appellate Division's decision to discuss the merits does not remove the procedural bar. *See Carey v. Connell*, No. 10-cv-3873 (DLC), 2012 WL 37084, at *4 n.1 (S.D.N.Y. Jan. 6, 2012) (noting that the Appellate Division may rest its decision on both a state procedural bar and that the case is without merit).

Further, this case does not fall within the "small category" of cases in which the state procedural bar is inadequate or applied in an exorbitant manner. *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003).   As discussed above, New York appellate courts routinely hold that a motion to dismiss for insufficient evidence must be "specifically directed at the alleged error." *See People v. Carncross*, 927 N.E.2d 532, 534 (N.Y. 2010).   Further, Petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a factual record supporting its decision that could then have been properly reviewed on appeal." *Whitley*, 642 F.3d at 290.   Finally, this case presents none of the unique circumstances that made compliance difficult in *Cotto*.   331 F.3d at 246-47.

Finally, there is nothing in the record, or the Petition, to suggest that Petitioner can establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default in this case.   *See Cotto*, 331 F.3d at 239 n.10. Accordingly, the Appellate Division's denial of this claim as unpreserved for appellate review precludes federal review of the claims.   *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 78-79 (2d Cir. 1999) ("[I]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a contemporaneous objection rule, a federal court generally may not consider the merits of the

constitutional claim on habeas corpus review." (internal quotation marks omitted) (citation omitted)).

### B.   Merits

Even if it were not procedurally barred, Petitioner's legal insufficiency claim is meritless. "In evaluating whether the evidence [was] sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution." *Einaugler v. Sup. Ct. of the State of N.Y.*, 109 F.3d 836, 840-41 (2d Cir. 1997) (internal quotation marks and citation omitted). The court must uphold a petitioner's conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

When examining this type of claim, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). The Petition does not clearly identify which count of conviction is being challenged, relying solely on the argument that the victim's wounds were superficial. (Pet. at 10.) If Petitioner is referring to his Attempted Murder charge, this claim is not a basis for relief because, under New York law, this charge does not require any injury. *See People v. Fernandez*, 673 N.E.2d 910, 914 (N.Y. 1996) ("The crime of attempted second degree murder is committed when, with the intent to cause the death of another person, one

33

engages in conduct which tends to effect commission of that crime. Where those elements converge, an attempted murder has occurred, regardless of whether the defendant has killed or even injured his or her intended target.  In other words, the crime of attempted murder does not require actual physical injury to a victim at all." (citing N.Y. Penal Law §§ 110.00; 125.25(1))).

Petitioner's claim similarly does not provide a basis for relief when applied to count two from Petitioner's first trial, assault in the second degree, for which injury (but not serious injury) must be found.  *See* N.Y. Penal Law § 120.05 ("A person is guilty of assault in the second degree when . . . 2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument.").  Viewing the evidence in the light most favorable to the prosecution, the trial record clearly establishes that Petitioner caused the victim physical injury, defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9); (*see* Tr. at 720-741.)  Similarly, it is clear that Petitioner's caused the injury through the use of an air rifle and, subsequently, a knife, fulfilling the requirement that the injury be caused "by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05; *see also* N.Y. Penal Law § 10.00(13) (defining a dangerous instrument as "any instrument, article or substance . . . which, under the circumstances in which

it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury"). Ms. Sanchez testified that Petitioner shot her in the head with a pellet rifle, and subsequently stabbed her multiple times with a knife. (Tr. at 228-36.) Consequently, even if petitioner could overcome the procedural default, his legal insufficiency claim would be rejected because the Appellate Division's determination that the evidence was legally sufficient was not based on an unreasonable interpretation of the facts.

Lastly, Petitioner's concurrent claim that the verdict was against the weight of the evidence is not a cognizable ground for federal habeas corpus review because it is "a pure state law claim grounded in CPL § 470.15(5)." *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). As noted above, where Petitioner's claim does not allege a violation of any federal right, the claim is not cognizable under federal habeas corpus review. *See Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's claim that his conviction was against the weight of the evidence is not a basis for habeas relief. Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." (internal quotation marks and citation omitted)).

35

### III. Grounds Three and Eight: Double Jeopardy

Petitioner contends that his retrial on the attempted murder charge was barred by double jeopardy.  (Pet. at 28; Pet. II at 44.)  The Court finds this claim to be both procedurally barred and meritless.

On direct appeal, Petitioner argued both statutory double jeopardy (pursuant to CPL § 40.20(2)) and constitutional double jeopardy (in his *pro se* brief) claims.  (Appellant Br. at 35; Appellant P. Br. at 19.)  Plaintiff renews both claims as the third and eighth ground for habeas relief in his Petition, respectively. (Pet. at 28; Pet. II at 44.)  The Appellate Division found the statutory claim to be unpreserved for appellate review pursuant to CPL § 470.05(2) and both claims to be meritless.  *Martinez*, 130 N.Y.S.3d at 830-31.

#### A.    Statutory Double Jeopardy Claim

Under New York law, "[a] statutory claim that one may not be separately prosecuted for two offenses based on the same act or criminal transaction . . . must be duly preserved if there is to be appellate review."  *People v. Biggs*, 803 N.E.2d 370, 374 (N.Y. 2003) (citation omitted).  The same is not true for "state and federal constitutional double jeopardy claims [which] are reviewable even when they are not properly preserved [in the trial court]."  *Id.*  Petitioner's counsel did not raise any CPL § 40.20(2) objections before the trial court, and thus, the Appellate

36

Division properly found that the statutory double jeopardy claim had not been properly preserved. *Martinez*, 130 N.Y.S.3d at 830.

Even if Petitioner's statutory double jeopardy claim were not procedurally barred, this Court would be unable to review the Appellate Division's decision on the merits, as it does not constitute an application of federal law. *See Lee v. Bell*, No. 19-cv-3224 (CS) (JCM), 2023 WL 9100341, at *8 (S.D.N.Y. Sept. 22, 2023), *report and recommendation adopted*, 2024 WL 74262 (S.D.N.Y. Jan. 2, 2024) ("The State's application of New York's Criminal Procedure Law does not unreasonably apply federal law since its statutory double jeopardy framework [CPL §§ 40.20 and 40.40] is meant to be more stringent than the Fifth Amendment."). "Accordingly, whether a state court has properly applied that statute . . . or whether its violation constitutes harmless error . . . are not issues that are reviewable on federal habeas corpus." *Harris v. Perez*, No. 14-cv-7218 (SLT), 2017 WL 5468782, at *5 (E.D.N.Y. Nov. 13, 2017) (internal quotation marks and citation omitted).

Furthermore, even if this Court were able to review the Appellate Division's holding on Petitioner's statutory double jeopardy claim, it would find that the Appellate Division correctly found it to be without merit. CPL § 40.20(2) states a "person may not be separately prosecuted for two offenses based upon the same act or criminal transaction," except in specified circumstances.

37

One of those circumstances is when "[e]ach of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil". CPL § 40.20(2)(b).  Here, Petitioner appears to argue, as his lawyers did in his original appellate brief, that because Petitioner was convicted of the lesser included offense of assault in the second degree at his original trial, but the attempted murder charge remained unresolved, he could not be re-tried for the attempted murder charge because "the offenses substantially have the same elements and the acts were not [clearly] distinguishable from eachother [sic]." (Pet. at 28.)  As noted by the Respondent, the elements of the two offenses are clearly distinguishable.

Under New York state law, to find Petitioner guilty of attempted murder in the second degree, the jury would need to find that Petitioner attempted to cause the death of a person with the intent to cause the death of that person or of another person. N.Y. Penal Law §§ 110, 125.25(1).  By contrast, the first degree assault charge required a jury to find that Petitioner, with the intent to cause serious physical injury, caused such injury by means of a dangerous instrument.  N.Y. Penal Law § 120.10(1). Separately, and as mentioned *supra,* the second degree assault charge required a finding that Petitioner, by means of a dangerous instrument and with intent to cause physical injury to another

38

person, caused such injury.   N.Y. Penal Law § 120.05(2).   As a result, Petitioner's acquittal of the first degree assault charge and his conviction of the second degree assault charge at his first trial did not pose any issue with respect to his second trial for attempted murder.   Because each of the offenses "contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil," Petitioner's retrial did not violate New York's statutory double jeopardy provisions.   CPL § 40.20(2)(b).

**B.   Constitutional Double Jeopardy**

Turning to the constitutional double jeopardy claim, the Appellate Division's merits dismissal of Petitioner's claim was not an unreasonable application of clearly established federal law, and thus cannot support habeas relief.

The Double Jeopardy Clause of the United States Constitution states in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.   The Supreme Court has described the clause as "afford[ing] a defendant three basic protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'"   *Ohio v. Johnson*, 467 U.S. 493, 4998 (1984)

(quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  The purpose behind these "protections stem[s] from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Schiro v. Farley*, 510 U.S. 222, 229 (1994).  The clause thus "operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent" so that "[w]hen a defendant has been acquitted, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him." *Id.* at 229-30 (internal quotation marks and citations omitted); *see also Johnson*, 467 U.S. at 498 (describing the bar to retrial following acquittal or conviction).

"Where a defendant either objects or fails to consent to a trial court's declaration of a mistrial, double jeopardy will bar a second prosecution unless there was a 'manifest necessity' for the mistrial." *Maula v. Freckleton*, 972 F.2d 27, 28-29 (2d Cir. 1992) (citing *United States v. Dinitz*, 424 U.S. 600, 606-07 (1976)).  "No 'manifest necessity' analysis is required, however, when a defendant requests a mistrial, or consents to one." *Id.* at 29; *see also United States v. Huang*, 960 F.2d 1128, 1133 (2d Cir. 1992) ("[T]he Double Jeopardy Clause guards against government oppression; it does not relieve a defendant of the consequences of his voluntary choice to accept a mistrial.").

Here, when the trail court in the first trial presented the parties with a formal complaint from a juror regarding conduct of the other jurors during deliberations, Petitioner's counsel stated that he believed it would be appropriate to declare a mistrial due to the jurors engaging in improper deliberations. (Tr. at 1110-12.)  After hearing from both Petitioner's counsel and the prosecution, the trial court granted Petitioner's counsel's motion for a mistrial pursuant to CPL § 280.10(1).  (*Id.* at 1114.)  The trial court expressly added, after declaring a mistrial at the request of Petitioner's counsel, that "[t]here is no double jeopardy.  I will reschedule the trial on the count of attempted murder in the second degree." (*Id.*)

Reviewing the record, it is clear that the mistrial was declared at the request of Petitioner's counsel.  As such, no finding of "manifest necessity" was required by the court to allow a retrial to proceed without violating double jeopardy.  *Maula*, 972 F.2d at 29.  Furthermore, Petitioner does not allege, and the record does not reflect, that the prosecution or the trial court acted in a "a manner intended to provoke a defendant to move for a mistrial." *Id.*  Accordingly, Petitioner's double jeopardy claim presents no basis for habeas relief, and the Appellate Division's decision rejecting it was not an "unreasonable application of, clearly established Federal law" or "based on an unreasonable

41

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## IV.  Ground Four: Excessive Sentence

Petitioner argues that imposition of the maximum sentence of 25 years of incarceration on the attempted murder count of conviction followed by 5 years of post-release supervision is excessive in light of Petitioner's history of mental illness.[6] (Pet. at 35.)  Whether interpreted as arising under state law or under the Eighth Amendment, this Court finds no grounds for habeas relief in connection with the Petitioner's sentence.

### A.    State Law Excessive Sentence Claim

If Petitioner intends to renew his reduced sentence claim that he made to the Appellate Division, that claim is denied because it does not provide a federal basis for habeas relief.  On direct appeal, Petitioner argued for the Appellate Division to modify his sentence "in the interest of justice because the sentence meted out was inappropriate punishment for a person of [Petitioner's] mental condition and disproportionate for the crimes for which he was convicted."  (Appellant Br. at 45.)  The Appellate Division declined to disturb the sentence, stating that

---

[6] The trial court also imposed concurrent sentences of seven years for assault in the second degree, and one year each for the criminal possession of a weapon and endangering the welfare of a child charges, which did not exceed the twenty-five year sentence.  (ECF No. 6-38, December 16, 2016, Sentencing Tr., at 22.)

"[t]he sentence imposed was not excessive." *Martinez*, 130 N.Y.S.3d at 831.

Petitioner's counsel did not argue that the sentence imposed was outside the statutory range for the crimes of which Petitioner was convicted, or otherwise illegal.  (Appellant Br. at 42.) Petitioner's counsel instead cited CPL § 470.26(6) as providing the statutory authority for the Appellate Division to modify an unduly harsh or severe sentence "in the interest of justice," (*id.* at 39), but this appears to be a scrivener's error, as no such section of the Criminal Procedure Law exists – instead, counsel was presumably referring to CPL §§ 470.15(3)(c) and (6)(b), which allow the Appellate Division to modify a legal sentence because it was "unduly harsh or severe."

Numerous courts in this circuit, however, have found that "a claim for a reduction in sentence pursuant to [CPL] § 470.15 does not, without more, raise a federal constitutional issue and is therefore not cognizable on habeas review." *Bonilla v. Lee*, 35 F. Supp. 3d 551, 572 (S.D.N.Y. 2014); *see also Santiago v. Shanley*, No. 20-cv-3530 (RPK), 2023 WL 3321665, at *3 (E.D.N.Y. May 8, 2023) (finding petitioner's renewed reduction-of-sentence claim under state law was not cognizable on habeas review).  Thus, to the extent Petitioner seeks to renew his reduction-of-sentence claim and excessive sentence claim under state law, Petitioner's claim is denied because it is not cognizable under federal habeas review.

43

**B.    Eighth Amendment Claim**

To the extent the petition may be liberally construed to contend that Petitioner's sentence violates the Eighth Amendment, his contention lacks clarity, as it merely argues the sentence was "harsh and excessive" given the "victim suffered superficial wounds." (Pet. at 35.)  Nevertheless, even construing the Petition as implicating Petitioner's Eighth Amendment rights, it fails for two reasons.

*First*, Petitioner's claim is procedurally barred. Petitioner's direct appeal made no reference to the Eighth Amendment, and merely claimed that the sentence was "inappropriate" and "disproportionate" and requested the Appellate Division to modify the sentence "in the interest of justice." (Appellant Br. at 45.)  "Because petitioner's 'Appellate Division brief presented his excessive sentence claim in terms of state law, invoking the power of a state appellate court to reduce sentences in the interest of justice under C.P.L. § 470.15(6)(b),' his exclusive 'reliance on a state procedural law granting courts discretionary authority to reduce sentences d[id] not fairly present his[] constitutional claim [to the] state court.'" *Santiago*, 2023 WL 3321665 at *3 (quoting *King v. Cunningham*, 442 F. Supp. 2d 171, 181 (S.D.N.Y. 2006)) (collecting cases). "Because petitioner 'did not claim his sentence deprived him of any federal constitutional right' on direct appeal in state court, he has

44

'failed to exhaust the remedies available in state court' with respect to any claim under the Eighth Amendment, and so the 'court[] need not consider the claim.'" *Id.* (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Accordingly, the claim was not properly exhausted and cannot be considered by this Court.

To overcome a procedural bar, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. However, Petitioner has failed to meet his burden. Petitioner has not provided any explanation for his failure to properly exhaust his claims in state court or offered proof of actual innocence. Thus, he may not overcome the procedural bar for any constitutional claim regarding the excessiveness of his sentence.

*Second*, notwithstanding the procedural bar, even if the Court could consider Petitioner's claim, it is without merit. It is well-settled law that "[n]o federal constitutional issue is presented where . . . the sentence falls within the range prescribed by the state law." *White*, 969 F.2d at 1383 (affirming dismissal of petition for habeas relief where Petitioner challenged as cruel and unusual a sentence within the range prescribed by state law). Here, the sentence of 25 years is within the maximum 25-year range prescribed by state law for a Class B violent felony, including

45

Attempted Murder in the Second Degree, of which Petitioner was convicted.  *See* N.Y. Penal Law §§ 70.02(1)(a), (3)(a) (maximum period of imprisonment for a Class B violent felony is twenty-five years and the minimum is no less than five years).

Furthermore, "there is no Supreme Court case that has ever found a sentence to be in violation of the Eighth Amendment merely because of its length." *Shanley*, 2023 WL 3321665, at *4 (citation omitted); *see also Carmona v. Ward*, 576 F.2d 405, 408 (2d Cir. 1978) ("[the Supreme] Court has never found a sentence imposed in a criminal case violative of the Eighth Amendment merely because of its length").  Petitioner cannot succeed in showing that, in upholding his 25-year sentence, the Appellate Division rendered a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).

Finally, regarding Petitioner's contentions as to the "superficial wounds," the Court would first note the significant physical wounds suffered by Ms. Sanchez, including multiple lacerations and a projectile that was lodged in her neck.  (Tr. at 251, 720.)  Furthermore, the Court would refer to Petitioner's sentencing transcript, in which one of his daughters described the emotional impact of his crime on the entire family:

> I've given a lot of thought to what I want to say to
> [Petitioner], but I still can't put any words together
> on how much [he has] damaged me these past few years. I

understand that [he has] a lot of pain, even before all
this, but [he] didn't have to take it out on my mother.
I always thought maybe for a second [he] would think how
this would affect us, not just me, but my sisters, [his]
daughters.
And to be completely honest, I didn't want to be here
today because I didn't want to have to put in my own
time to see someone who caused me so much pain, to me
and my family . . . I hope [he] realize[s] what [he] did
was wrong and one day [he] will realize how badly this
affected me personally.

(ECF No. 6-38, December 16, 2016, Sentencing Tr., at 8.)  The trial

court subsequently explained the reasoning behind the sentence for

Petitioner, stating:

THE COURT: [Petitioner is] not going to be penalized for
going to trial. He will be penalized for the acts he
performed against his family. . . . You sat in wait, in
hiding, waiting for the mother of your children to come
home so you could execute her. . . . And I've come to
the conclusion, Mr. Martinez, that what I have to do
with respect to this sentence is to make sure, as best
as I can, from where I'm sitting, that you will never
ever be given the opportunity to do that again.

(*Id.* at 20-21.)  Regardless of what Petitioner may believe about

the nature of the wounds he inflicted on his victim, and the impact

of his offenses, the trial court reasonably determined that the

nature of the offense and the need for specific deterrence

counseled in favor of the statutory maximum sentence for the

conviction.  "The Eighth Amendment condemns only punishment that

shocks the collective conscience of society."  *United States v.*

*Gonzalez*, 922 F.2d 1044, 1053 (2d Cir. 1991).  Petitioner's

sentence of 25 years for a brutal attempted murder is not so

disproportionate to the offense that it shocks the public's

conscience.  Accordingly, Petitioner's Eighth Amendment claim is procedurally barred, and, in any event without merit, and is denied.

**V.   Ground Five and Six: *Miranda* Rights and Right to Counsel During Custodial Interrogation**

Petitioner renews claims regarding the admissibility of certain statements he made to police, alleging a violation of his *Miranda* rights and his right to counsel during interrogation. (Pet. II at 1-2.)  The Appellate Division rejected this claim on the merits, finding that "[c]ontrary to the [Petitioner's] contention, the County Court properly denied that branch of his omnibus motion which was to suppress his statement to police as the evidence at the hearing established that the statement was spontaneously made and was not the product of police interrogation or its functional equivalent." *Martinez*, 130 N.Y.S.3d at 829-30. Because the Appellate Division rejected Petitioner's claim on the merits, this court could grant the writ only if the Appellate Division's ruling was either: (1) contrary to Supreme Court precedent; or (2) a misapplication thereof.  28 U.S.C. § 2254(d).

Criminal suspects are entitled under the Constitution to be advised of their rights, *inter alia,* to remain silent and to an attorney before law enforcement conducts a "custodial interrogation" of the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (citing *Miranda v. Arizona*, 384 U.S. 436, 444

(1966)). It is well-established that if a suspect makes statements that are voluntarily or spontaneous, before an interrogation begins, a *Miranda* warning is not required for those statements to be admissible against the suspect. *See Innis*, 446 U.S. at 300-01 ("the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent"); *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011) ("An interaction between law enforcement officials and an individual generally triggers *Miranda*'s prophylactic warnings when the interaction becomes a 'custodial interrogation.'").

*First,* the admission into evidence at trial of Petitioner's statements -- that he wanted to die -- made to Officer Martin is consistent with the governing federal law. (H. at 8.) There is no evidence that Petitioner's statement was made in response to a question by Officer Martin, rather it was made in response to Officer Martin's command that Petitioner drop his weapon. (Tr. at 159.) Since Petitioner's statements were made voluntarily and prior to the commencement of any interrogation, *Miranda* warnings were not required for the statements to admissible against him. *See United States v. Mason*, 550 F. Supp. 2d 309, 319 (E.D.N.Y. 2008) ("Where the statements are not made in response to questioning or its equivalent, they fall outside *Miranda*'s purview.").

49

*Second*, Petitioner's claim that he was denied his right to counsel and was not informed of his *Miranda* rights during his interview with Detective Balnis is unsupported.  The hearing transcript establishes that Det. Balnis did, in fact, inform Petitioner of his *Miranda* rights and ceased his interview of Petitioner after Petitioner made it clear he would not sign the *Miranda* form.  (H. at 29.)  This fact alone is dispositive in the Court's determination that no *Miranda* violation took place. Furthermore, as noted by Respondent, no evidence regarding Petitioner's statements to Det. Balnis was ever offered at trial, and Det. Balnis was not called to testify.  (ECF No. 6-1, Respondent's Mem. of Law, at 30.)  As a result, because Det. Balnis properly administered Petitioner's *Miranda* warnings and stopped questioning when Petitioner refused to waive them, no violation occurred.  Because Petitioner's *Miranda* claims fail, they cannot be the basis of federal habeas relief, and the Court therefore denies habeas relief on these grounds.

## VI.  Grounds Three, Four, Seven: Ineffective Assistance of Trial Counsel

Petitioner argues that he received ineffective assistance of counsel due to his trial counsel failing to call witnesses and submit motions.  (Pet. at 28, 35; Pet. II at 36.)  Petitioner raised similar claims of ineffective assistance in his direct appeal to the Appellate Division.  (Appellant Br. at 35, 39;

Appellant P. Br. at 15.) The Appellate Division rejected Petitioner's claims of ineffective assistance on the merits, concluding that Plaintiff "was provided with meaningful representation at trial and sentencing." *Martinez*, 130 N.Y.S.3d at 831; *see also Gersten v. Senkowski*, 426 F.3d 588, 601, 606 (2d Cir. 2005) (determining state court decided petitioner's ineffective assistance of counsel claim on the merits where the court summarized "that the defendant received meaningful representation").

### A.   Applicable Law

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. In assessing counsel's performance, a reviewing court must operate on the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009). Second, Petitioner must demonstrate prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Merely showing that the errors had some effect on the outcome of the proceeding is insufficient. *Id.* at 693. Instead, "[c]ounsel's errors must

51

be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Both the *Strickland* standard and the AEDPA are highly deferential, and "when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Although the Appellate Division referred only to New York's "meaningful representation" standard in rejecting Petitioner's claims, courts in this circuit have concluded that such a decision "constitutes an adjudication on the merits of Petitioner's ineffective assistance of counsel claims" and is therefore "afforded deference under AEDPA." *Bogan v. Bradt*, No. 11-cv-1550 (MKB) (LB), 2017 WL 2913465, at *8 (E.D.N.Y. July 6, 2017). Accordingly, the Appellate Division's adjudication is entitled to AEDPA deference, and this Court will consider "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington*, 562 U.S. at 105.

## B. Failing to Object on Double Jeopardy Grounds

Petitioner contends that his trial counsel provided ineffective assistance of counsel by failing to make a pre-trial motion to dismiss Petitioner's second trial on Double Jeopardy grounds. (Pet. at 28.) As discussed *supra*, the second trial was not barred by Double Jeopardy and Petitioner's claim is meritless. Failure to raise a meritless motion does not demonstrate

52

ineffective assistance of counsel. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("because Petitioner's double jeopardy claim was, at bottom, meritless, the Appellate Division did not unreasonably apply the *Strickland* standard in holding that Petitioner had not been denied the effective assistance of appellate counsel on this claim. The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled." (citation omitted)). Petitioner has failed to meet either prong of the *Strickland* test, and thus his claim of ineffective assistance of counsel based on double jeopardy is denied.

### C. Excessive Sentence

Petitioner also argues that his trial counsel provided ineffective assistance of counsel in failing to raise Petitioner's history of mental illness with the court to attempt to mitigate his sentence. (Pet. at 35.) As an initial matter, the Court has already concluded that Petitioner's excessive sentence claim is meritless, "and it is not ineffective assistance of counsel to fail to make meritless arguments." *Castillo v. United States*, No. 19-cr-428 (JGK), 2023 WL 6622071, at *6 (S.D.N.Y. Oct. 11, 2023) (citing *Johnson v. United States*, 779 F.3d 125, 130 (2d Cir. 2015)). Additionally, there is no reason to believe the second trial court was unaware of the competency hearings and other pre-trial proceedings from the first trial court, and Petitioner offers

no evidence showing this to be the case. Finally, "[Petitioner] himself had an opportunity at sentencing to make a statement to the sentencing judge, which could have, as appropriate, contained words of explanation, mitigation, and/or contrition." *Swaby v. People*, No. 06-cv-3845 (ENV), 2014 WL 1347204, at *17 (E.D.N.Y. Mar. 31, 2014), *aff'd sub nom. Swaby v. New York*, 613 F. App'x 48 (2d Cir. 2015). The Court therefore finds that "neither the record at sentencing, nor as it is supplemented on this habeas application suggests that any significant mitigating factor was omitted from the sentencing court's consideration." *Id.* Consequently, Petitioner has failed to show that his sentence would have been different but for counsel's ineffectiveness. *See United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997). Petitioner's second claim of ineffective assistance of counsel is accordingly denied.

### D.  Trial Counsel

Lastly, Petitioner alleges his trial counsel provided ineffective assistance of counsel in failing to call certain witnesses. (Pet. II at 36.) "Courts applying Strickland are especially deferential to defense attorneys' decisions about which witnesses to call." *Bethea v. Walsh*, No. 09-cv-5037, 2016 WL 258639, at *18 (E.D.N.Y. Jan. 19, 2016). "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam).

Thus, "counsel's decision as to 'whether to call specific witnesses . . . is ordinarily not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)); *cf. Bell v. Cone*, 535 U.S. 685, 700 (2002). Furthermore, Petitioner fails to identify exactly which witnesses his counsel should have, but did not call, to testify at the trial. The prosecution called all of the eyewitnesses to the attempted murder to testify, and the medical expert called in the first trial was no longer necessary in the second trial given "serious injury" was not an element of attempted murder, as discussed *supra.* Accordingly, the Court finds Petitioner's claim that his trial counsel was ineffective is meritless, and therefore fails to meet the doubly deferential standard for habeas relief under *Strickland* and the AEDPA.

## VII. Ground Nine: Right to a Speedy Trial

Petitioner renews his claim of a violation of both his constitutional and state statutory right to a speedy trial. (Pet. II at 50, 52.) Petitioner previously advanced this claim in his pro se appellate brief. (Appellant P. Br. at 18.) The Appellate Division denied Petitioner's constitutional argument as unpreserved, stating that "the defendant did not advance that claim before the County Court." *Martinez*, 130 N.Y.S.3d at 830. The Appellate Division denied the statutory speedy trial claim on the

55

merits, stating that it "was properly denied because all of the periods of delay set forth in [Petitioner's] motion were excludable under C.P.L. § 30.30(4)(a) as delay occasioned by proceedings to determine the petitioner's competency, or under C.P.L. § 30.30(4)(b) as delay occasioned by adjournments at the request of or with the consent of the defense." *Id*. The Court finds that Petitioner's constitutional claim is procedurally barred and without merit, and Petitioner' state statutory claim is not cognizable on habeas review.

### A.    State Law Speedy Trial Rights

To the extent Petitioner bases his claim on state law, specifically CPL § 30.30, such claims are not cognizable on Federal *habeas* review. "A federal court may only review federal claims and lacks the power to review a conviction on state law speedy trial grounds." *Clinkscales v. Collado*, No. 20-cv-3757 (RPK) (LB), 2021 WL 11448463, at *8 (E.D.N.Y. Oct. 12, 2021); *see also Cadilla v. Johnson*, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim."). Petitioner also cites his Sixth Amendment right to a speedy trial in his Petition, however, so this Court will also examine his claim for a constitutional speedy trial violation, accordingly.

**B.    Procedural Bar**

The Appellate Division found that Petitioner's constitutional claim of a speedy trial violation was unpreserved for appellate review, and this Court agrees.  Although the Petitioner did move to dismiss the indictment prior to his second trial, he did so, in a counseled brief, based on the prosecution "failure to be ready for trial in the statutory period of six months under C.P.L. 30.30." (ECF No. 6-45, Def.'s Mot. to Dismiss, at 3.)  The motion makes no mention of Petitioner's constitutional rights, nor is there any reference to a constitutional speedy trial violation in the transcript of the proceedings in the trial court.

Accordingly, as the Appellate Division determined, Petitioner's claim regarding a constitutional violation was not preserved for state appellate review.  *People v. Mandes*, 91 N.Y.S.3d 194, 197 (2d Dep't 2019) ("insofar as the issue is raised for the first time on appeal, the defendant's contention that his constitutional speedy trial rights were violated is unpreserved for appellate review"); *see also People v. Card*, 968 N.Y.S.2d 803 (2d Dep't 2013).  Because the Appellate Division clearly and expressly stated that its judgment rested on a state procedural bar, federal habeas review of the claim is foreclosed unless Petitioner can show either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*,

57

269 F.3d at 90.  Here, Petitioner fails to demonstrate cause and prejudice, or that a fundamental miscarriage of justice would result from the procedural bar of his constitutional speedy trial claim.

### C.   Merits

Even if the Court were to review Petitioner's speedy trial claim on constitutional grounds, the claim would be denied for lack of merit because the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.  "[T]he Supreme Court [has] articulated four factors to be considered in determining whether a defendant's constitutional right to a speedy trial had been violated: 'Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *United States v. Howard*, 443 F. App'x 596, 599 (2d Cir. 2011) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

The length of the delay between Petitioner's arrest on February 13, 2011, and his first trial in January 2015, was 47 months.  The Second Circuit has stated that there is a "general consensus that a delay of over eight months meets this standard [of presumptive prejudice], while a delay of less than five months does not."  *Dexter v. Artus*, No. 01-cv-237 (TJM) (VEB), 2007 WL 963204, at *6 (N.D.N.Y. Mar. 27, 2007) (alteration in original) (quoting *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir.

1992), *cert. denied sub nom.* 506 U.S. 1009 (1992)); *Doggett v. United States*, 505 U.S. 647, 652 & n. 1 (1992) (generally delays of more than one year warrant further *Barker* inquiry).  Though a 47-month delay may be presumptively prejudicial, it does not, per se, establish a violation of petitioner's Sixth Amendment right to a speedy trial.  Federal courts have repeatedly found that comparable delays do not violate the Sixth Amendment.  *See*, *e.g.*, *United States v. Jones*, 91 F.3d 5, 9 (2d Cir. 1996) (denying speedy trial relief for a delay of 25 months); *United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) (denying speedy trial relief for a delay of 47 months).

When analyzed under the remaining three *Barker* factors, the delay in the instant case did not violate Petitioner's constitutional right to a speedy trial.  The reason for the delay was first, to provide mental health treatment and assess whether Petitioner was competent to stand trial, and second, to allow new defense counsel to prepare for Petitioner's re-trial on the attempted murder charge.  (ECF No. 6-42, Respondent's Opp'n to Def.'s Pro Se Suppl. Br., at 39-40.)  "Because the delays in this case have been necessary to ensure the integrity of the criminal process, by ensuring that [Petitioner] is competent to stand trial, there has been no violation of [his] right to a Speedy Trial." *United States v. Lewis*, 5 F. Supp. 3d 515, 531 (S.D.N.Y. 2014).

Furthermore, the instant habeas petition fails to demonstrate or even allege that Petitioner was prejudiced from the delay. *See generally United States v. Williams*, 372 F.3d 96, 113 (2d Cir. 2004) (allegation that "witnesses have disappeared; recollections are dim; and the investigation is impaired" are insufficient to demonstrate prejudice); *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) ("the opportunity for the prosecution to prepare for trial does not, on its own, amount to prejudice to the defense;" rather, "prejudice is concerned with impediments to the ability of the defense to make its own case"). Petitioner cites no evidence of any undue delay on the part of the prosecution, and in the absence of further details, there does not appear to have been any "deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531.

Accordingly, because the delay was not deliberate on the part of the prosecution, and there is no indication of actual prejudice, Petitioner does not sufficiently allege a violation of his Constitutional speedy trial rights. Accordingly, even if Petitioner's claim were not procedurally defaulted, it is without merit.

## VIII.    Ground Ten: Due Process of Law

Petitioner raises three separate grounds for the violation of his due process rights: (1) Petitioner's prosecution was time-barred by New York's statute of limitations, (2) the verdict in

Petitioner's first trial was the product of duress, and (3) both trial courts improperly denied Petitioner's counsel's requests for a mistrial based on allegedly prejudicial trial testimony.  (Pet. II at 52.)  This Court finds none of these claims to be grounds for habeas relief.

### A.    Statute of Limitations

First, Petitioner's statute of limitations contention does not raise a cognizable federal constitutional claim because it is based solely on state law.  *See* CPL §30.10(2)(b) (setting forth five-year statute of limitations for commencement of prosecution of a felony).  AEDPA permits federal habeas review of state court adjudications only where a "violation of the Constitution or laws or treaties of the United States" has occurred.  28 U.S.C. § 2254(a).  Therefore, Petitioner's state statute of limitations claim is not a basis for habeas relief.  Furthermore, even if it did provide a basis, the record reflects that the claim is clearly without merit.  The crimes for which Petitioner was prosecuted took place on February 13, 2011, and he was indicted on February 17, 2011, four days later, and arraigned on February 24, 2011. (*See generally* ECF No. 6-43, Indictment; ECF No. 6-42, Respondent's Opp'n to Def.'s Pro Se Suppl. Br.)  Any claim that Petitioner's prosecution was barred by the five-year statute of limitations is without merit.

**B.    Petitioner's Remaining Due Process Claims**

Petitioner's latter two contentions regarding duress and improper denial of requests for mistrial are both raised for the first time in Petitioner's habeas petition.   These claims could have been decided upon a review of the record and, therefore, could have been raised on Petitioner's direct appeal.  *See Robinson v. Artus*, 664 F. Supp. 2d 247, 263-65 (W.D.N.Y. 2009) (finding petitioner's claim that the trial court erred in denying defense motion for mistrial was a record-based claim that could have been raised on appeal and, because it had not been raised, was unexhausted).  Accordingly, the claims were not properly exhausted and cannot be considered by this Court.

Additionally, Petitioner's claims are procedurally defaulted because he cannot return to state court to raise it.   Petitioner has already filed the one direct appeal to the Appellate Division to which he is entitled, and he was denied leave to appeal to the Court of Appeals.  *See Martinez*, 162 N.E.3d at 685.  "[U]nder New York law a petitioner may not obtain collateral review of any claims he could have raised on direct appeal, but did not."  *Walker v. Bennett*, 262 F. Supp. 2d 25, 31 (W.D.N.Y. 2003) (citing *Aparicio*, 269 F.3d at 91).   Petitioner fails to allege "cause for the default and prejudice" and therefore fails to overcome the procedural bar to habeas review.  *Aparicio*, 269 F.3d at 90.

### 1.   Juror Duress Claim

Even if they were not procedurally defaulted, Petitioner's latter two contentions are also meritless.  First, there is no indication that the partial verdict, convicting Petitioner of certain counts and acquitting him of others, in the first trial was the product of juror duress.  The record reflects no complaints of duress during the jury's deliberations, and even when a juror complained of misconduct, after the partial verdict had already been accepted, it was with regards to deliberations on the attempted murder charge.  (Tr. at 1110-11.)  The trial court properly granted a mistrial as to that charge at the request of defense counsel, and over the objections of the prosecution.  (*Id.* at 1114.)

"A federal court's post-conviction inquiry into jury deliberations is limited." *Goode v. Mazzuca*, No. 00-cv-7932 (PKC), 2004 WL 1794508, at *5 (S.D.N.Y. Aug. 11, 2004).  To warrant relief, there must be "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *U.S. v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (ellipses in original) (citations omitted). "Allegations of verbal intimidations among jurors, even to the point of screaming and abusive language, do not rise to the level of clear and strong evidence necessary to warrant habeas relief." *Goode*, 2004 WL 1794508 at *6.  Here, Petitioner offers no evidence

63

of any misconduct beyond that which formed the basis of the mistrial on the attempted murder charge, and the Court sees no grounds to set aside the jury's partial verdict convicting and acquitting Petitioner of specific counts.

### 2. Prejudicial Testimony Claims

Regarding Petitioner's other claim that the trial court improperly denied his attorneys' motions for mistrials based upon allegedly prejudicial testimony, the Court finds the claim to be procedurally defaulted, as discussed *supra,* and meritless. Where a petitioner alleges an incorrect evidentiary ruling at trial, this Court must first ascertain whether the state court ruling was proper under state law; if the ruling correctly applied the state evidentiary rule, there is no constitutional violation. *Delancey v. Lee*, No. 15-cv-891 (RRM) (CLP), 2019 WL 9051134, at *17 (E.D.N.Y. Nov. 4, 2019), *report and recommendation adopted*, 2020 WL 3084285 (E.D.N.Y. June 10, 2020). Second, if this Court finds the evidentiary ruling was made in error, it must determine whether the error violated a constitutional right. *Id.* For a ruling to rise to such a level, the error must have deprived petitioner of a fundamentally fair trial. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985). Courts have clarified that such deprivation occurs when the error in question has removed reasonable doubt that was otherwise present in the context of the entire record. *Rosario v.*

*Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)).

The trial court denied defense requests for a mistrial on two occasions: during the first trial when the victim mentioned a prior order of protection against Petitioner, and during the second trial when the victim mentioned Petitioner had been using drugs prior to his arrest.  (Tr. at 266-69; ECF No. 6-33, Second Trial Tr. for November 9, 2016, at 131-35.)  "A federal habeas court may, of course, review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a 'fundamentally fair trial.'"  *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (citation omitted).  In both instances raised by Petitioner, however, the Court finds no error of state evidentiary law.

### a.   Testimony Regarding Order of Protection

First, regarding the order of protection, the challenged testimony by Ms. Sanchez was given in response to a question by defense counsel:

> Q. Thank you. Did you tell the detective on February 13th of 2011 that you had not lived with [Petitioner] for three years?
>
> A. I don't remember if I told him that he had not lived with me for three years. I did tell the detective he wasn't supposed to live in my house because he had an Order of Protection for my daughters and he had a warrant for his arrest.

(Tr. at 266.)   Defense counsel moved for a mistrial, arguing that there had been a ruling that the order of protection could not be mentioned, and the prosecution countered that the witness's testimony was responsive to defense counsel's question.   (*Id.* at 267-68.)   The Court ultimately denied the application for a mistrial, stating that the witness "answer[ed] the question as she saw it."   (*Id.* at 269.)   The parties had agreed not to seek "to elicit any testimony" regarding the order of protection, and the prosecution stated that they "had no intention of referencing it during the pendency of the proceedings."   (*See* ECF No. 6-8, Hr'g Tr. for December 4, 2014, at 10, 27.)

Here, there is no evidence that the prosecution breached its agreement, or that the trial court erred in failing to grant the defense request for a mistrial when defense counsel inadvertently elicited the existence of the order of protection.   Despite the parties' agreement not to reference the orders of protection, Petitioner cites no authority suggesting that the evidence was, in fact, inadmissible.   *See, e.g., People v. Saunders*, 620 N.Y.S.2d 356, 357 (1st Dep't 1994) ("The court properly permitted the prosecutor to introduce evidence of defendant's prior acts of domestic violence against the complainant, including his threats to kill her and his arrests for violating numerous orders of protection, as proof of defendant's intent to commit the crimes charged, including attempted murder"); *see also People v.*

66

*Christian*, 121 N.Y.S.3d 99, 101 (2d Dep't 2020) ("Contrary to the defendant's contention, the evidence about the defendant's violation of the order of protection was properly admitted as relevant background material to enable the jury to understand the defendant's motive and intent in the commission of the charged crime.").

The testimony was provided in response to defense counsel's question and the trial court properly exercised its discretion in determining that the probative value outweighed any prejudicial effect. *See People v. Frumusa*, 79 N.E.3d 495, 501 (N.Y. 2017) ("Relevant evidence may still be excluded in the exercise of the trial court's discretion if its probative value is substantially outweighed by the potential for prejudice." (internal quotation marks and citation omitted)).

### b.   Testimony Regarding Petitioner's Drug Use

Second, regarding Petitioner's drug use, the challenged testimony by Ms. Sanchez at the second trial was provided in response to a question by the prosecution:

> Q. When did your relationship with Sabas Martinez end? Approximately. As far as the romantic husband/wife type of relationship, even though I know you said you weren't husband and wife.
>
> A. We have a lot of problems before he arrested [sic]. He's using drugs –
>
> [Defense Counsel]: Judge, objection
>
> THE COURT: Sustained

> [Defense Counsel]: Objection.
>
> THE COURT: Sustained.  The jury will disregard that answer in its entirety.

(ECF No. 6-33, Second Trial Tr. for November 9, 2016, at 131-32.) Defense counsel subsequently moved for a mistrial, arguing that, combined with early stricken testimony regarding Petitioner's problems with his daughters, the prejudicial impact of the testimony could not be fixed with a curative instruction. (*Id.* at 132-33.)  The prosecution argued that the question had not been intended to elicit the testimony, and that defense counsel had previously mentioned Petitioner's DWI with "multiple witnesses." (*Id.* at 134.)  The trial court ultimately denied the mistrial request, but cautioned the prosecution to "quit while you're ahead." (*Id.* at 135.)  The prosecution clarified the question to get the date the relationship ended, and then ceased questioning the witness. (*Id.*)

Because the asserted prejudicial testimony was promptly struck from the record, and the jury was instructed to disregard it, Petitioner's claim is without merit.  A jury is presumed to follow the court's instructions. *See, e.g., Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence . . ., unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions." (citation

68

omitted)).  Petitioner has failed to argue that the jury would be unable to follow the court's instructions to disregard the passing reference to drug use, or that the testimony "was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 19.  Therefore, even if the Court were able to review Petitioner's claim, it would find it without merit.

## IX.  Ground Eleven: Right to be Present at Material Stages of Proceedings

Petitioner contends that his right to be present at all material stages of the proceedings was violated by his removal from the courtroom during some proceedings.  (Pet. III at 1.)  The Appellate Division rejected this claim on the merits as part of Petitioner's "remaining contentions."  *Martinez*, 130 N.Y.S.3d at 831.  Accordingly, Petitioner is entitled to habeas relief only if the Appellate Division's ruling was either: (1) contrary to Supreme Court precedent; or (2) a misapplication thereof.  28 U.S.C. § 2254(d).

"The Due Process Clause and the Confrontation Clause of the Sixth Amendment, as applied to the States via the Fourteenth Amendment, both guarantee to a criminal defendant . . . the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'"  *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (quoting *Faretta v. California*, 422 U.S.

806, 819 n. 15 (1975)).  However, a defendant's due process right
to be present at a proceeding exists only "to the extent that a
fair and just hearing would be thwarted by his absence, and to
that extent only." *United States v. Gagnon*, 470 U.S. 522, 526
(1985) (citation omitted).  In addition, the right to be present
at all stages of trial "is not absolute and may be waived, either
explicitly or by the defendant's conduct." *Norde v. Keane*, 294
F.3d 401, 411 (2d Cir. 2002) (citing *Illinois v. Allen*, 397 U.S.
337, 342-43 (1970)).  The Supreme Court has stated that

> a defendant can lose his right to be present at trial
> if, after he has been warned by the judge that he will
> be removed if he continues his disruptive behavior, he
> nevertheless insists on conducting himself in a manner
> so disorderly, disruptive, and disrespectful of the
> court that his trial cannot be carried on with him in
> the courtroom.

*Allen*, 397 U.S. at 343.  "Even if a defendant's behavior is
disruptive enough to warrant removal, the defendant's right to be
present can be 'reclaimed as soon as the defendant is willing to
conduct himself consistently with the decorum and respect inherent
in the concept of courts and judicial proceedings.'" *Norde*, 294
F.3d at 411 (quoting *Allen*, 397 U.S. at 343).  "On federal post-
conviction review, the court must review a trial judge's decision
to remove a defendant from the courtroom with two levels of
deference: first, the deference afforded to any decision to remove
a defendant from the courtroom, and second, the deference afforded
to any state court decision on federal post-conviction review."

*Paige v. Eckert*, No. 16-cv-6802 (MKB), 2020 WL 9816017, at *11 (E.D.N.Y. July 8, 2020) (citing *Jones v. Murphy*, 694 F.3d 225, 241 (2d Cir. 2012)), *aff'd*, 850 F. App'x 59 (2d Cir. 2021).

Petitioner forfeited his right to be present for each of the proceedings from which he was removed. Looking first at Petitioner's competency hearing on March 14, 2013, the following exchange occurred before Petitioner was removed from the proceedings:

> THE DEFENDANT: What is your name?  I want to see your delegation, your authority.  What is your authority?
>
> THE COURT OFFICER: Sit down, Mr. Martinez.
>
> THE DEFENDANT: What is your authority? (Yelling.)
>
> (A discussion was held off the record.)
>
> THE COURT: Mr. Martinez, Mr. Martinez. Mr. Martinez. If you don't keep quiet, we'll have this hearing without you.
>
> THE DEFENDANT: Good. Who asked for this hearing?
>
> THE COURT: Your attorney asked for this hearing.
>
> THE DEFENDANT: He is not my lawyer anymore. He is fired today. Okay?
>
> [Petitioner repeatedly states his lawyer is fired.]
>
> THE COURT: If you say that again I'm going to remove you from the room. And we will continue with the hearing without you.
>
> THE INTERPRETER[7]: He says, I would like to see your delegation also, your authority.

---

[7] The hearing court subsequently determined that Petitioner did not, in fact, require the assistance of an interpreter.  (ECF No. 6-3, Hr'g Tr. for March 2013 Hr'gs, at 5-8.)

> THE COURT: I want him removed. Remove him from the
> courtroom.

(ECF No. 6-3, Hr'g Tr. for March 2013 Hr'gs, at 2-4.)  The hearing
court found on the record that Petitioner would be removed "because
he was verbally and physically carrying on with the court personnel
and with the Court, and not answering the Court and showing real
contempt for the proceedings." (*Id.* at 5.)  The Court subsequently
ensured that Petitioner was able to listen to the proceedings
remotely.  (*Id.* at 8.)  When the hearing was adjourned and then
reconvened for additional testimony on March 18, 2013, the hearing
court warned Petitioner that "[i]f there are any outbursts I'm
going to remove you from the courtroom. Do you understand that?"
(*Id.* at 83.)  The Petitioner complied and did not engage in further
disorderly behavior, and was present for the remainder of the March
2013 competency hearings.  (*See generally id.*)

A similar incident occurred at the beginning of Petitioner's
second competency hearing.  The hearing court warned Petitioner
that any disruptive behavior would result in his removal, and
Petitioner subsequently disregarded the court's directive not to
speak by engaging in a lengthy argument.  (*See generally* ECF No.
6-7, Hr'g Tr. for June 19-20, 2014, at 4.)  Petitioner demanded
the court "say your name for the record," asked if the court had
"filed . . . the claim against me," and stated that the court
"cannot move without my consent, which it doesn't have. (*Id.* at

5.)   Again, the Court arranged for Petitioner to listen to the proceedings remotely.  (*Id.* at 6.)  When the hearing continued on June 20, 2014, Petitioner waived his appearance, stating "I cannot speak so then what is the purpose to be in the courtroom?" but then subsequently began to argue with the hearing court again. (*Id.* at 61-62.)  Petitioner was again removed and allowed to listen to the proceedings remotely.  (*Id.* at 62-63.)

This Court need not exhaustively describe Petitioner's removal from further proceedings beyond stating that it follows a similar pattern to the removals above.  Petitioner was removed from the combined *Molineux/Sandoval* hearing[8] on December 4, 2014, after a lengthy statement in which he "recused" the trial court off of his case, awarded himself monetary relief, and made other demands.  (ECF No. 6-8, Hr'g Tr. for December 4, 2014, at 3-7.) Petitioner engaged in similar disruptive behavior at the beginning of jury selection, again resulting in his removal.  (ECF No. 6-9, Hr'g Tr. for December 9-12, 2014, at 2-4, 122-24.)   Petitioner

---

[8] The Court notes that courts in this circuit have found no *Constitutional* right to be present for a *Sandoval* hearing, and from some portions of a *Molineux* hearing.  *See, e.g., Grayton v. Ercole*, No. 07-cv-0485 (SLT), 2009 WL 2876239, at *4 (E.D.N.Y. Sept. 8, 2009) ("In the context of a petitioner's absence from a *Sandoval* hearing, district courts in [the Second] Circuit have found no cognizable basis for habeas relief."), *aff'd*, 691 F.3d 165 (2d Cir. 2012); *see also Liggins v. Burge*, 689 F. Supp. 2d 640, 651 (S.D.N.Y. 2010) (reviewing court found that Petitioner's "absence from [the] final stage of the Trial Court's review of Molineux and Sandoval evidentiary issues did not undermine the fairness of the proceeding nor detract from the fullness of Liggins's opportunity to defend himself").  Because the Court finds that Petitioner waived his right to be present based on his disruptive behavior, as discussed *infra*, it need not determine whether a "fair and just hearing would be thwarted by his absence" from the *Sandoval/Molineux* hearing.  *Gagnon*, 470 U.S. at 526.

subsequently agreed to cease with his outbursts and was present for the remainder of jury selection from December 11, 2014, forward. (*Id.* at 262-63.) Petitioner's final removal was on the first day of the trial, January 6, 2015, when he interrupted the proceedings as opening statements were about to begin. (Tr. at 28.) The trial court excused the jury, and then explained to Petitioner that he had been warned "about no outbursts and speeches" and that Petitioner would accordingly be removed. (*Id.* at 28-29.) Petitioner engaged in an additional profane outburst before being removed. (*Id.* at 29.) After warning Petitioner that further outbursts would result in his removal on the second day of the trial, January 7, 2015, Petitioner complied and was present for the remainder of the trial. (*Id.* at 147.) Petitioner was not removed at any point from his second trial.

The primary requirement for involuntary removal is that a defendant must "insist[] on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Gilchrist v. O'Keefe*, 260 F.3d 87, 96 (2d Cir. 2001) (quoting *Allen*, 397 U.S. at 343). Although the defendant in Allen behaved in an extremely disruptive manner, the Second Circuit has repeatedly stated that "a defendant may be removed for conduct significantly less egregious than [that of the defendant in *Allen*]." *Paige*, 850 F. App'x at 61; *see also Norde*, 294 F.3d at 413. Applying the

doubly deferential standard of review to the trial court's decision and the Appellate Division's holding, *Jones*, 694 F.3d at 241, the Court concludes that the Appellate Division reasonably determined that the trial court had a valid basis to exclude Petitioner from each of the proceedings discussed above.   The record shows Petitioner repeatedly yelled at and interrupted the court, demanded the Court answer irrelevant questions, and made speeches about the trial court's jurisdiction.   Petitioner was provided several warnings before he was removed and was allowed to observe the proceedings.   He was subsequently allowed to return to the proceedings after agreeing to cease his disruptive behavior.   On each occasion, audio of the proceedings was available for Petitioner to listen to remotely.   On this record, the Court cannot find that the Appellate Division unreasonably applied *Allen* in dismissing Petitioner's arguments.   Petitioner has likewise failed to show that the Appellate Division unreasonably determined the facts relevant to his removal from the proceedings.   Accordingly, the Court denies Petitioner's request for habeas relief as to this claim.

**X.   Ground Sixteen: Right to Present a Defense and Call Witnesses**

Petitioner contends he was denied his right to present a defense and call witnesses.   (Pet. III at 93.)   The Appellate Division rejected this claim on the merits as part of Petitioner's

"remaining contentions." *Martinez*, 130 N.Y.S.3d at 831. Accordingly, this court will grant the writ only if the Appellate Division's ruling was either: (1) contrary to Supreme Court precedent; or (2) a misapplication thereof. 28 U.S.C. § 2254(d).

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001). However, a defendant must still "comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

As an initial matter, it is not clear that Petitioner actually presented this claim to the Appellate Division, as his argument in the Petition includes a series of Exhibits (partially completed subpoenas) which do not appear to have been annexed to his *pro se* Appellate Brief. (Appellant P. Br. at 40.) However, even assuming the claim is not procedurally barred and may be reviewed, the claim is meritless.

In determining whether an exclusion of defense evidence violated the right to present witnesses, the Second Circuit considers the "determinative question to be whether the omitted evidence would have created reasonable doubt." *Wade v. Mantello*, 333 F.3d 51, 58-59 (2d Cir. 2003). Petitioner presented three witnesses at his first trial and none at his second. The record does not indicate that Petitioner attempted to call a witness and was denied.[9] Petitioner fails to even allege the nature of the relevant testimony the witnesses would have provided if they had been called, making it impossible for this Court to determine whether or not this omitted evidence would have created reasonable doubt. *See Ball v. Superintendent*, No. 18-cv-1356 (BKS) (CFH), 2019 WL 2636140, at *2 (N.D.N.Y. June 27, 2019) (dismissing habeas petition where the court was forced to speculate regarding the claims being asserted and the grounds upon which petitioner based his arguments); *Strzelecki v. Cunningham*, No. 15-cv-0133 (SFJ), 2019 WL 6050404, at *12 (E.D.N.Y. Nov. 15, 2019) (finding the Appellate Division "did not unreasonably apply federal law" in excluding testimony that "at best, was marginally relevant" (citation omitted)). Because Petitioner has failed to set forth any argument regarding an actual denial of his right to call

---

[9] Petitioner appeared to personally request subpoenas be issued for the New York Attorney General in his first trial, and for unrelated corrections officers in his second trial, and the court in each instance properly denied the requests as not being relevant without objection from defense counsel. (*See* Tr. at 4-5; ECF No. 6-31, Trial Tr. for November 4, 2016, at 91-92.)

witnesses, or the nature of the testimony which was excluded, he does not state a claim for habeas relief.

## XI.  Grounds 12 through 15 and 17

Petitioner also makes a number of additional claims concerning his trial process and treatment, which the Court will consider together.  Petitioner argues (1) that the trial court failed to provide proof of the court's jurisdiction (Ground 12 of petition; Point 9 of pro se brief); (2) that he was not provided a copy of his pre-sentence report (Ground 13 of petition; Point 10 of pro se brief); (3) that his judgment of conviction was not "verified" (Ground 14 of petition; Point 11 of pro se brief); (4) that he was denied his right to free speech (Ground 15 of petition; Point 12 of pro se brief); and (5) that the prosecution's witnesses against him committed perjury (Point 17 of petition; Point 15 of pro se brief).  The Court finds Petitioner's remaining claims to be without merit.

The Appellate Division rejected these claims on the merits as part of Petitioner's "remaining contentions."  *Martinez*, 130 N.Y.S.3d at 831.  "It is well-settled in [the Second] Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."  *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013); *see also Brown v. New York*, No. 04-cv-1087 (NG) (VVP), 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) ("A habeas

78

petition may be denied 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'" (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970))).

Petitioner's claims here are no more than vague and conclusory allegations. Petitioner's jurisdictional claim has no factual basis, nor does his claim that his judgment of conviction was not "verified." To the extent Petitioner believes the trial court lacked jurisdiction over him because he is a "sovereign citizen," the Court has previously considered such arguments in the habeas context and found them without merit and "legally frivolous." *James v. D'Amore*, No. 22-cv-1120 (KAM), 2024 WL 384912, at *23 (E.D.N.Y. Feb. 1, 2024). Likewise, Petitioner's apparent claim that the yellow fringe on the American flag somehow impacts a trial court's jurisdiction is also without any merit. *See Joyner v. Borough of Brooklyn*, No. 98-cv-2579 (RJD), 1999 WL 294780, at *2 (E.D.N.Y. Mar. 18, 1999) (finding the "yellow fringe trim on the American flag has no effect on a court's jurisdiction or a defendant's constitutional or statutory rights") (collecting cases).

Petitioner's claim that his judgment of conviction was not "verified" is especially vague and would require undue speculation by this Court to determine the alleged grounds for relief. *See*

*Ball*, 2019 WL 2636140 at *2 (dismissing habeas petition where the court was forced to speculate regarding the claims being asserted).

Petitioner's claims that he was denied a copy of his pre-sentence report and that various witnesses against him committed perjury do not have any basis in the record. Although Petitioner made a lengthy statement at sentencing, neither he nor his counsel claimed any violation of his right to inspect the pre-sentence report, and he offers no evidence in the Petition to show that he did not receive it in a timely fashion. (*See* ECF No. 6-38, December 16, 2016, Sentencing Tr.) Petitioner also appears to claim that the probation officer "lie[d]" in stating that Petitioner gave a statement to her, but Petitioner offers no factual support for the allegation and points to no erroneous factual information contained in the PSR. (Pet. III at 66.) In any event, Petitioner's claim that he was not allowed to view his pre-sentence report is purely a state law claim and is thus not a basis for habeas relief. *See Miller v. Hunt*, No. 06-cv-177, 2008 WL 170411, at *10 (N.D.N.Y. Jan. 15, 2008) (right to view pre-sentence report is based on CPL § 390.50(2)(a) and thus not available for review in a habeas corpus action).

Regarding his separate claims of perjury, Petitioner appears to argue that evidence was tampered with, and that law enforcement witnesses, enabled by the prosecution, lied under oath. (Pet. IV at 1.) Petitioner offers no support for these contentions beyond

attaching pages of the trial transcript where he identifies statements that he alleges are untrue and constitute perjury. (*Id.* at 2-103.)  A habeas petitioner "has the burden of demonstrating, by a preponderance of evidence, that [a] witness committed perjury, and, in determining whether perjury occurred, a court must 'weigh all the evidence of perjury before it.'" *Anekwe v. Phillips*, No. 05 CV 2183 (ARR), 2007 WL 1592973, at *6 (E.D.N.Y. May 31, 2007) (citing *Ortega v. Duncan*, 333 F.3d 102, 106-07 (2d Cir. 2003)).  A conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

Petitioner's unsupported allegations of perjury are insufficient as a matter of law. *See Black v. Rock*, 103 F. Supp. 3d 305, 319 (E.D.N.Y. 2015) (allegation of inconsistent testimony, without more, was insufficient to show witnesses had the "willful intent to provide false testimony" rather than merely making mistakes, and petitioner therefore "failed to meet his burden to show the testimony was perjured").  The Court has no difficulty concluding that Petitioner's claims lack a sufficient basis to warrant habeas relief, as the record contains no evidence that the prosecution introduced false testimony, knowingly or otherwise.

81

Accordingly, Petitioner's claims of perjury do not support habeas relief.

Finally, Petitioner's claim that he was denied his freedom of speech appears to be based on the trial court not allowing him to speak out of turn at proceedings. (Pet. III at 78.) Specifically, Petitioner cites portions of the transcript where he was removed from the court for disorderly conduct as demonstrating the alleged freedom of speech violation. (Pet. III at 79-92.) As an initial matter, the Supreme Court has clearly stated that a courthouse is not a public forum for First Amendment purposes. *See United States v. Grace*, 461 U.S. 171, 178 (1983) (holding that the Supreme Court building and its grounds other than public sidewalks are not public forums, and noting "[Courts have] not been traditionally held open for the use of the public for expressive activities"). Furthermore, the Supreme Court has held that "during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed . . . [and] [a]n attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991). The Court has already found *supra* that Petitioner was properly removed from the courtroom based on his disruptive conduct. Whatever First Amendment rights Petitioner might have had in a courtroom, they did not provide him with a blank check to disrupt the court's

proceedings. *See Allen*, 397 U.S. at 343 (finding that a defendant can lose his right to be present at a proceeding if is conduct is "so disorderly, disruptive, and disrespectful of the court" that the proceeding cannot continue.)

In conclusion, Petitioner's claims in grounds 12 through 15 and 17 of his Petition are unsupported by facts and are wholly without merit. Petitioner has therefore failed to show that the Appellate Division either contradicted or unreasonably applied clearly established Supreme Court precedent in denying his claims, or that the Appellate Division unreasonably determined the relevant facts. Accordingly, the Court denies Petitioner's request for habeas relief as to the remaining claims.

## CONCLUSION

For the foregoing reasons, Petitioner's Section 2254 petition is respectfully **denied** and **dismissed** in its entirety. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied and shall not issue. *See* 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); Rules Governing Section 2254 and 2255 Cases in the United States District Courts, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully requested to enter judgment in favor of Respondent and close this case. In accordance with 28

U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies in forma pauperis status for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is requested to serve a copy of this Memorandum and Order and the Judgment on Petitioner and note such service on the docket by July 25, 2024.

**SO ORDERED**

Dated:      July 22, 2024
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York